## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **WILLIAM KEITH ROBEY,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-03-S-2199-S** |
| | ) | |
| **WARDEN BULLARD; and THE** | ) | |
| **ATTORNEY GENERAL OF THE** | ) | |
| **STATE OF ALABAMA,** | ) | |
| | ) | |
| **Respondents.** | ) | |

## MEMORANDUM OPINION

This case is before the court on a petition for writ of habeas corpus brought by a person in custody under judgment of a court of the State of Alabama, filed pursuant to 28 U.S.C. § 2254.[1]  Petitioner challenges the validity of his 1999 convictions for murder and first degree assault in the Circuit Court of Jefferson County, Alabama.  He subsequently filed a Motion for Voluntary Dismissal of Petition Without Prejudice,[2] which also will be addressed *infra*.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Just after midnight on March 5, 1995, William Keith Robey ("Robey" or "petitioner") was driving an automobile in a westwardly direction on U.S. Highway

---

[1] This statute permits federal courts to entertain a petition for habeas corpus filed on behalf of a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Congress directs federal courts to "summarily hear and determine the facts, and dispose of the matter as law and justice require."  28 U.S.C. § 2243.

[2] *See* document number ("doc. no.") 40; *see also* doc. no. 41 (Motion to Withdraw Petitioner's Motion to Dismiss and to Stay Proceedings).

78 in Birmingham, Jefferson County, Alabama.  It was lightly drizzling rain and the streets were wet.[3]  Robey was driving his vehicle above the posted speed limit of 50 miles an hour, and, under the influence of alcohol and diazepam.  His girlfriend, Tasha Kathleen Reese, was a passenger.  She was not wearing a seatbelt.[4]  Kevin Tyree was another driver westbound on Highway 78, but he was not exceeding the posted speed limit.  Tyree observed in his rear-view mirror that Robey was coming up from behind, and gaining on, his automobile just before Robey's vehicle began to weave, and then veered to the left, crossing the center line of the roadway into the oncoming lanes of traffic.[5]  Robey's automobile collided head-on with another vehicle driven by Jessie James McNabb, who was eastbound on Highway 78.[6]  Reese was killed and McNabb was seriously injured.[7]  Robey sustained only facial and nasal lacerations.  The best estimates of the time of collision were 12:15 to 12:20 a.m.[8]

The first Birmingham Police Officer to respond to the scene of the wreck was John Bishop.  He arrived sometime between 12:20 and 12:30 a.m.[9]  Bishop was joined

---

[3] TR. 83, 91, 225.  All references to the trial transcript contained within Respondents' Exhibit 1 are designated "**TR**. ___."  References to the pages of the record compiled by the Clerk of the Jefferson County Circuit Court are designated "**CR.**___" for the trial record, and "**R32:**___" for the Clerk's record of proceedings conducted in connection with Robey's petition, filed pursuant to Alabama Rule of Criminal Procedure 32 (Respondents' Ex. 7).

[4] TR. 200, 278.

[5] *Id*. at 145-52.

[6] *Id*. at 81-83.

[7] *Id*. at 86-91.

[8] *Id*. at 28, 34; CR. 206.

[9] TR. 28, 198.

by, first, Officer Timothy Buckelew and, later, Officer Venus Feagins, both of whom arrived between 12:30 and 1:00 a.m.[10]

Officer Bishop asked Robey whether he was "all right," but Robey did not respond verbally:  instead, he "bobbed" his head up-and-down, in an affirmative manner.[11]  Bishop observed that Robey's automobile contained beer bottles, a bottle of vodka (half-empty), and a bottle of orange juice (also half-empty).[12]  Bishop asked Robey where he had been prior to the collision, and he said "J.T.'s," which is the name of a nightclub on the east side of Birmingham.[13]  Bishop testified that Robey smelled of alcohol, his eyes were bloodshot, and his speech was slurred.[14]  Bishop did not administer physical "field sobriety tests" to Robey because, initially, he was not able to stand, but when assisted to his feet, he still was unsteady.  Robey refused Bishop's request that he submit to a test to determine the extent of alcohol in his system.[15]  Officer Bishop placed Robey under arrest for driving under the influence of alcohol at 12:40 a.m.[16]

Officer Venus Feagins transported Robey to the Birmingham City Jail.  Upon their arrival, Officer Feagins and Jail Officer Culberson asked Robey to submit to a

---

[10] *Id.* at 10, 22, 29, 44, 166.

[11] *Id.* at 200.

[12] *Id.* at 203-07.

[13] *Id.* at 168, 242.

[14] *Id.* at 168-69, 201, 282.

[15] *Id.* at 30, 201-02, 232.

[16] *Id.* at 202-03; CR.174.

breath test, to determine the amount of alcohol in his system, but he refused.  This occurred at approximately 1:33 a.m.[17]

Officer Feagins recited *Miranda* rights to Robey at 1:37 a.m.,[18] but he refused to sign a form confirming that she had done so.[19]

At 1:40 a.m., Officer Feagins requested that Robey submit to a blood test, but he again refused, saying that the drawing of blood was against his religion.[20]

Robey ultimately agreed to provide a urine sample, however, and he was transported to Cooper Green Hospital for that purpose.[21]  He signed a form indicating his permission for a urine sample to be collected at 3:03 a.m., and the sample was provided shortly thereafter.[22]

Following Robey's refusal to voluntarily provide a blood sample for laboratory analysis, two officers drove to the home of Jefferson County, Alabama District Judge Robert Cahill and obtained a search warrant.[23]  Blood was drawn from Robey pursuant to that warrant at 3:45 a.m.[24]  Toxicology analysis established a blood alcohol level of 0.128% over three hours after the wreck, as well as the presence of diazepam and nordiazepam in Robey's system.[25]

---

[17] TR. 13, 169-71, CR.174.

[18] *Id*. at. 10; CR. 176.

[19] TR.171-74.

[20] *Id*. at 13, 171.

[21] *Id*. at 171, 175.

[22] *Id*. at 99-100, 176-78;CR.165-67, 171, 173.

[23] *Id*. at 210; 288-90.

[24] *Id*. at 102-03, 211-12; CR.165, 171.

[25] TR. 125, 128-29, 299-313; CR. 76-77.

Officer Timothy Buckelew testified as an accident investigator for the City of Birmingham.[26]  According to Buckelew, the vehicle driven by Robey was traveling in a westerly direction when it impacted with the other vehicle inside the eastbound lane.[27]

On cross-examination, Buckelew was asked if he checked out the petitioner's automobile to assure that there was nothing mechanically wrong with it.  He admitted that was not done in this case.[28]

> Q.   How many times did you go out, after this accident, to Kemp's garage and take a look at this vehicle?
>
> A.   I don't believe I ever went out to Kemp's to look at that particular car.
>
> * * * * *
> Q.   You can't tell me and you can't tell this jury that there was absolutely nothing wrong with the chassis of this red Camaro prior to that accident, can you?
>
> A.   No sir, I sure can't.
>
> Q.   You can't tell me whether the frame and body of this car were in normal working order, can you?
>
> A.   No, sir.[29]

Aside from cross-examination of Buckelew, Robey's trial counsel offered no evidence that the automobile had any mechanical defects.

---

[26] TR.280-298.

[27] *Id*. at 287.

[28] *Id*. at 293.

[29] *Id*. at 295-96.

The Jefferson County Grand Jury returned two indictments on September 1, 1995. One charged Robey with two counts of assault in the first degree, and the other charged him with one count of murder.[30] The first count of the assault indictment charged that Robey,

> under circumstances manifesting extreme indifference to the value of human life, recklessly engage[d] in conduct which created a grave risk of death to another person and did thereby cause serious physical injury to JESSIE JAMES McNABB, JR., by operating a motor vehicle while under the influence of alcohol and crossing the center line of the road and colliding with a motor vehicle being driven by the said JESSIE JAMES McNABB, JR. . . . .

The second count charged that Robey,

> while driving under the influence of alcohol or a controlled substance or any combination thereof in violation of Section 32-5A-191 of the Code of Alabama, 1975, did cause serious bodily injury to the person of another, to-wit:  JESSIE JAMES McNABB, JR., with a motor vehicle.

The sole count of the murder indictment charged that Robey

> engage[d] in conduct which manifested extreme indifference to human life, creating a grave risk of death to a person other than the said WILLIAM KEITH ROBEY, and did thereby cause the death of TASHA KATHLEEN REESE by operating a vehicle while under the influence of alcohol and crossing the center line of the road and colliding with another motor vehicle[,] thereby causing the death of TASHA KATHLEEN REESE, who was a passenger in the vehicle operated by said WILLIAM KEITH ROBEY, in violation of Section 13A-6-2 of the Alabama Criminal Code, against the peace and dignity of the State of Alabama.

Robey was represented at trial by Stephen Guthrie and John Wood.  His attorneys filed motions to suppress laboratory reports of the urine and blood samples

---

[30] CR.18; 137-38.

taken from Robey as involuntary and unlawfully obtained pursuant to an invalid warrant, respectively.[31]  Following an evidentiary hearing, the motions were denied.[32] At the close of the state's evidence, Robey moved for a judgment of acquittal based on an alleged lack of evidence establishing the element of causation.[33]  His attorneys argued that no testimony or evidence established that Robey's consumption of alcohol or ingestion of controlled substances had caused the wreck, the death of Tasha Reese, or severe injury to Jessie McNabb.[34]  The trial judge overruled the motion, and the defense rested without presenting any evidence.

During the third, rebuttal stage of closing arguments, the state prosecutor made three comments that were objected to by Robey's counsel:

MS. GWINN:     Let's have some blood and urine, make sure we're wrong.  Show us otherwise.

MR. GUTHRIE:   I'll object to that, Your Honor.

THE COURT:     Overruled.

                    * * * *

MS. GWINN:     And if he didn't have anything to hide that night, if he knew that there was something wrong with that car, and that's the reason he slipped on the road and went into the wrong lane of traffic, if he knew that, why did he bother to try to hide it?

MR. GUTHRIE:   I object to that.

---

[31] *Id.* at 64-67, 73-77, 102-05, 106-09.

[32] TR. 7-58.

[33] *Id.* at 340.

[34] *Id.* at 341-42.

-7-

THE COURT:      I'll overrule.

* * * *

MS. GWINN:      If he didn't have anything to hide, why would he tell them no?   Why not offer a simple explanation: "There's something wrong with the car."

MR. GUTHRIE:    Same objection, Your Honor.

THE COURT:      Overruled.  This is closing argument.[35]

The trial judge charged the jury on the elements of murder, manslaughter, criminally negligent homicide, homicide by vehicle, assault in the first degree, and assault in the second degree.  After deliberating for just under two hours on July 29, 1999, the jury found Robey guilty of murder and both counts of assault in the first degree.[36]  The trial judge sentenced Robey on September 24, 1999, as an habitual felony offender with two prior felony convictions,[37] to a term of life for murder and twenty years on each of the assault convictions, all to be served concurrently.[38]  The judge noted that, because both counts of the indictment charging Robey with assault arose out of the same course of conduct, involved the same victim, and therefore allowed the imposition of only one punishment, the concurrent twenty-year sentences for assault in the first degree satisfied the convictions on both counts.[39]

---

[35] *Id.* at 345-47.

[36] *Id.* at 374.

[37] Robey had been twice convicted of unlawful possession of controlled substances, first in 1991, and again in 1992.  (CR 110.)

[38] CR. 9; 132.

[39] *Id.* at 3-4, 13; Respondents' Ex. 1 (Supplemental Record on Appeal), at 20.

-8-

On direct appeal from his convictions, and still represented by John Wood, Robey claimed that:

(1)    the evidence was insufficient to support his convictions for murder and assault;

(2)    the verdict of the jury was against the weight of the evidence;

(3)    the prosecutor improperly commented on petitioner's constitutionally protected right not to testify; and

(4)    the prosecutor improperly shifted the burden of proof during her rebuttal closing remarks.[40]

The convictions were affirmed by the Alabama Court of Criminal Appeals on September 22, 2000.[41]  The court considered only the argument as to the sufficiency of the evidence as it bore on the issue of causation, holding that any other grounds for a claim of insufficiency of the evidence were waived.  After summarizing the evidence presented at trial, the court concluded that the State presented evidence from which the jury reasonably could have concluded that Reese's death and McNabb's injuries would not have occurred but for Robey's conduct; therefore, the claim was without merit.  As to Robey's other grounds for appeal, the court determined that, because defense counsel had lodged only general objections to the prosecutor's closing arguments, the issue had not been preserved for appellate review.  Further, because all of the closing arguments were not included in the record on appeal, that also prevented the appellate court from conducting a full review.  Finally, the court noted

---

[40] Respondents' Ex. 2.

[41] Respondents' Ex. 5.

that trial testimony establishing that Robey refused to submit breath or blood samples for analysis on the night of the accident made the prosecutor's comments a reasonable inference on the evidence.  In that same regard, the Alabama Court of Criminal Appeals also observed that

> it does not appear that the prosecutor's comments referred to the appellant's decision not to testify at trial and shifted the burden of proof to him.  Rather, it appears that they referred to the appellant's reluctance or refusal to provide samples [of his breath or blood] to law enforcement officers on the night of the accident.[42]

Robey did not file a petition for writ of *certiorari* with the Supreme Court of Alabama, and a Certificate of Judgment was issued on January 12, 2001.[43]

Robey did file, however, a petition for post-conviction relief pursuant to Rule 32 of the Alabama Rules of Criminal Procedure  on October 30, 2001.[44]  He asserted claims of ineffective assistance by trial and appellate counsel based on the following grounds:

> (a)  trial counsel failed to conduct an adequate pretrial investigation of all facts and circumstances of the case and the applicable law;
>
> (b)  counsel mishandled the sufficiency of the evidence issue by assigning the specific ground of causation, thereby waiving consideration of any other grounds on appeal;
>
> (c)  trial counsel failed to object to the court's oral charge and failed to request that the jury take a copy of the charges into the jury room to assist them in their deliberations;

---

[42] *Id.* at 7 (emphasis supplied).

[43] Respondents' Ex. 6.

[44] R32:26-102.

(d)  trial counsel failed to object to the court's oral charge and failed to submit written charges that would have explained legal terms and clarified petitioner's theory of the case;

(e)  appellate counsel failed to challenge the validity of the search warrant on appeal after moving to suppress the warrant;

(f)  trial counsel failed to object to the entry into evidence of the key chain when it was irrelevant and highly prejudicial [*i.e.*, the object was attached to the ignition key of the automobile driven by Robey and contained this inscription: "I'm trying to graduate with a 4.0 blood alcohol level"].

(g)  appellate counsel failed to appeal the issue of the relevance and admissibility of photographs of the deceased after objecting to their introduction into evidence at trial;

(h)  trial counsel failed to object or move for mistrial after a juror ate lunch with the victim's mother.

(i)  trial counsel should have called jurors to testify, on a motion for new trial, of any extraneous prejudicial information which may have been brought to their attention improperly;

(j)  trial and appellate counsel mishandled the issue of improper comments by the prosecutor during closing arguments by arguing that she commented on his right not to testify at trial when he should have argued that she improperly commented on his post-arrest silence;

(k)  appellate counsel failed to raise on appeal the issue of improper admission into evidence of petitioner's prior DUI after objecting to the evidence at trial;

(l)  trial counsel failed to object to the State's expert witness testimony concerning the ultimate issue and failed to request time to obtain an expert to rebut that testimony;

(m)  trial counsel failed to address a defect in the assault indictment charging petitioner with two counts of first degree assault to the same person arising out of the same incident;

(n)  trial and appellate counsel failed to address variances in the indictments in a motion for new trial or on appeal after presenting the issue at trial.

Robey also contended that the guilty verdicts were "obtained by a violation of petitioner's Fourteenth Amendment right to due process and equal protection of the law due to the progressive dilution in the interpretation of the murder statute as applied in DUI accidents resulting in death."

Robey filed a motion to amend his Rule 32 petition on February 7, 2002, to add a claim that his trial attorneys were ineffective for failing to request a jury instruction on the degree of intoxication possibly negating an essential element of murder.[45]

The trial judge denied Robey's Rule 32 petition on February 11, 2002, saying that his claims of ineffective assistance of trial counsel were "not supported by the record, and any of these alleged errors may well have been dictated by trial strategy, as opposed to error, and it is unlikely that any of the alleged acts or omissions would have had an effect on the outcome of this case."[46]  The trial judge further found that Robey failed to meet his burden of proof as to the elements of constitutionally deficient performance or prejudice, and that he failed to provide any basis in law or fact to support his claims.[47]

With respect to the assertions that appellate counsel was ineffective, the trial judge noted that counsel is not required to raise every conceivable issue on direct appeal, and the failure to raise some claims that petitioner thought were meritorious was not enough to satisfy his burden under *Strickland v. Washington*[48] of proving

---

[45] *Id.* at 113-17.

[46] *Id.* at 136-37.

[47] *Id.* at 137.

[48] 466 U.S. 668 (1984).

deficient performance or a different outcome on appeal.  The judge also expressed his opinion that the grounds petitioner had desired his appellate attorney to raise on appeal were without merit.  Specifically, with regard to petitioner's due process claim, the trial judge stated:

> The Petitioner feels that the facts of his case do not support his conviction for murder, and that he was only convicted due to societal pressures to punish drunk drivers.  This Court, having heard all of the evidence and arguments made during the petitioner's trial, finds that there was sufficient evidence to support the Petitioner's conviction for murder, and that questions as to sufficiency of the evidence are ultimately issues to be decided by the fact finder . . . .[49]

The denial of relief pursuant to Rule 32 of the Alabama Rules of Criminal Procedure was affirmed by the Alabama Court of Criminal Appeals on February 21, 2003.[50]  That Court addressed ten of Robey's claims of ineffective assistance of trial counsel, and four claims of ineffective assistance of appellate counsel, raised in the Rule 32 petition filed with, but rejected by, the trial court.[51]  With regard to Claim (a) *supra*, the Alabama Court of Criminal Appeals held that petitioner failed to specify any particular error or omission in the investigative process, or to show how it was prejudicial.  On Claim (b), the appeals court held that, because the state had offered evidence in support of the element of "extreme indifference to human life" — *i.e.*, that petitioner, while intoxicated, drove his unbelted passenger on a dark, rain-slick road

---

[49] R32:138.

[50] Respondents' Ex. 10 (Memorandum Opinion of Alabama Court of Criminal Appeals on appeal of Rule 32 claims).

[51] As explained *infra*, for reasons unknown, the Alabama Court of Criminal Appeals apparently failed to address some of the issues Robey raised at his Rule 32 proceeding in the trial court and re-alleged on appeal.

— the omission was neither deficient performance nor prejudicial.  On the jury charge issues (Claims (c) and (d)), the appellate court found that the case was not complex, that written jury charges normally are not provided, and that Robey failed to show either that the trial court's oral instructions were erroneous, or that the omission of written instructions was prejudicial; therefore, the claims were without merit.  As to the key chain issue (Claim (f)), the court held that if the chain belonged to Robey, it was highly probative, but if it did not, it was not prejudicial.  Claims (h) and (i) were found to be without merit, because the matter was brought to the court's attention by Robey's attorneys, and the trial court questioned the juror and determined that no prejudicial information had been conveyed to her before she was dismissed from the jury.  There was no showing that further questioning was warranted, especially in light of the court's determination that no prejudicial information had reached the jurors.

As to Claim (j), addressing the prosecutor's closing arguments, the appellate court found the comments at issue actually concerned Robey's refusal to either submit to a breath test or provide a blood sample, rather than his post-arrest silence.  It further held that Robey failed to show that an objection was required, or that he was prejudiced by the omission.  Claim (l) was rejected on the merits, based on a finding that the state's expert confined her testimony to the physical and psychological effects of alcohol consumption, and Robey failed to show either that an objection or defense expert was warranted.  With regard to the claim addressing the two assault counts (Claim (m)), the appellate court stated that the indictment charged Robey with assault in the first degree based on reckless conduct and while driving under the influence of

-14-

alcohol or a controlled substance, respectively.  Further, because there was evidence indicating that Robey's conduct was reckless with respect to the safety of his passenger, and Robey received concurrent sentences, his protection against double jeopardy was not violated.

Issue (n) was not addressed by the Alabama Court of Criminal Appeals.

The claims of ineffective assistance of appellate counsel were rejected as "invited error."  The appeals court stated that Robey should not have allowed the trial court to appoint an appellate counsel he believed to be ineffective; instead, he should have made his objections known at the trial court level, and requested the appointment of different counsel.

The Alabama Court of Criminal Appeals also held that Robey's argument about the blurring of the line between extreme indifference constituting murder and ordinary reckless conduct constituting manslaughter was insufficient to state a due process or equal protection claim.  The court construed the argument as actually questioning the sufficiency of the evidence to convict; and, as so construed, held that it was without merit, because the evidence supporting Robey's murder conviction was more than sufficient.

> Here, the intoxicated appellant weaved only once in his lane before he swerved into the oncoming lane.  However, the road was dark, rain-slick and in poor condition; and the appellant's passenger was not wearing a seat belt.  This conduct was sufficient to evidence his extreme indifference to the life of the passenger.[52]

---

[52] Respondents' Ex. 10 (Memorandum Opinion of Alabama Court of Criminal Appeals on appeal of Rule 32 claims), at 6.

Robey thereafter filed a petition for writ of *certiorari* with the Supreme Court of Alabama, but the writ was denied, and a Certificate of Judgment issued on June 27, 2003.

## II. PETITIONER'S HABEAS CLAIMS

Robey filed the present habeas petition on July 14, 2003. He filed a motion to amend the petition on January 6, 2004, which was granted. As grounds for relief, petitioner contends that:

(1) he received ineffective assistance of trial and appellate counsel because:

(a) trial counsel mishandled the sufficiency of the evidence issue by assigning the specific ground of causation, thereby waiving consideration of any other grounds on appeal;

(b) trial counsel mishandled the objection to the prosecution's improper comment in closing arguments on his post-arrest silence, by making only a general objection and thus failing to preserve the issue for appeal;

(c) trial counsel failed to challenge a defect in the indictment, charging Robey with two counts of first degree assault for injury to one person arising from a single incident, in violation of the 5th Amendment prohibition against double jeopardy;

(d) trial counsel failed to object to the admission into evidence of the key chain, as irrelevant and highly prejudicial;

(e) trial and appellate counsel failed to properly challenge the sufficiency of the search warrant for blood evidence which violated the Fourth Amendment and failed to raise the issue in a motion for new trial;

(f) trial and appellate counsel failed to challenge the fatal variance between the murder and assault indictments in a motion for new trial;

-16-

(g) trial and appellate counsel failed to challenge the admissibility into evidence of irrelevant and prejudicial photographs of the deceased in a motion for new trial; and

(h) trial counsel failed to object and request that the jury be charged on the lesser-included offense of second degree assault with regard to Count II of the assault indictment.

(2) The convictions were obtained in violation of his Fourteenth Amendment rights to due process and equal protection due to the progressive dilution in the interpretation of the murder statute as applied in DUI accidents resulting in death.

In response, respondents assert that Claims 1(a), 1(b), 1(e), 1(f), 1(g), 1(h), 2(a), 2(b), and 2(c) are procedurally defaulted due to petitioner's failure to raise them in the state courts. They argue that all other claims are without merit and do not warrant relief.

### III. MOTION FOR VOLUNTARY DISMISSAL OF PETITION

Petitioner filed a second petition for post-conviction relief pursuant to Rule 32 of the Alabama Rules of Criminal Procedure on May 12, 2003, some two and a half months prior to filing the instant habeas petition on August 6, 2003.[53] The state trial court has not yet issued a ruling on the second Rule 32 petition. Petitioner subsequently asked this court to dismiss the present habeas petition, arguing that it is a "mixed" petition, containing both exhausted and unexhausted claims. The matter which obviously prompted this motion was respondents' contention, in their supplemental answer,[54] that petitioner has not exhausted Claims 1(e), 1(f), 1(g), 1(h),

---

[53] *See* doc. no. 40 (Motion for Voluntary Dismissal of Petition Without Prejudice). This was the first notice of the second Rule 32 petition from either petitioner or respondents.

[54] Doc. no. 30.

2(a), 2(b), and 2(c).[55]  Consequently, petitioner contended that he must be given an opportunity to exhaust those claims by first presenting them to the state courts. Subsequent to filing the motion to dismiss, however, petitioner filed a motion to withdraw his motion to dismiss, in which he requested, as an alternative, that the court stay proceedings in this case until his pending Rule 32 petition is ruled on by the Alabama Supreme Court.[56]

Generally, an application for a writ of habeas corpus "shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A).  A petitioner is not deemed to have exhausted state remedies "if he has the right under the law of the State to raise, by any available procedure, the question presented."  *Id*. § 2254(c).  Even so, it sometimes is possible for a habeas petition to "be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).[57]  One such circumstance is presented when, as here, any attempt by petitioner to raise additional claims in a second, state Rule 32 petition would be futile.  The Alabama Rules of Criminal Procedure provide that:

---

[55] In addition, respondents contend that the one-year statute of limitations contained in Rule 32.2(c) of the Alabama Rules of Criminal Procedure would render futile any attempt by Robey to now raise such claims in the state court system, and that the claims are procedurally defaulted in state court.

[56] Doc. no. 41, filed Jan. 10, 2005.

[57] *Cf*., *e.g.*, *Smith v. Zant*, 887 F.2d 1407, 1418 (11th Cir. 1989) (*en banc*) ("[S]erial disposition of a habeas corpus petitioner's claims undermines, rather than promotes, judicial economy in both the federal and the state courts.") (Tjoflat, J. concurring).

> If a petitioner has previously filed a petition that challenges any judgment, all subsequent petitions by that petitioner challenging any judgment arising out of that same trial or guilty-plea proceeding shall be treated as successive petitions under this rule.  The court shall not grant relief on a successive petition on the same or similar grounds on behalf of the same petitioner.  A successive petition on different grounds shall be denied unless (1) the petitioner is entitled to relief on the ground that the court was without jurisdiction to render a judgment or to impose sentence or (2) the petitioner shows both that good cause exists why the new ground or grounds were not known or could not have been ascertained through reasonable diligence when the first petition was heard, and that failure to entertain the petition will result in a miscarriage of justice.

Ala. R. Crim. P. 32.2(d).  In addition, the same rule also provides that:

> Any claim that counsel was ineffective must be raised as soon as practicable, either at trial, on direct appeal, or in the first Rule 32 petition, whichever is applicable.  *In no event can relief be granted on a claim of ineffective assistance of trial or appellate counsel raised in a successive petition.*

*Id*. (emphasis supplied).  It is clear, therefore, that the Rule 32 petition filed in the state court by Robey on May 12, 2003 is a successive petition that is due to be denied summarily.  Further, Rule 32.2(d) precludes relief on any ineffective assistance of counsel claims raised in that successive petition.

Further, as to any new claims, a federal court may treat unexhausted claims as procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile.  *See Snowden v. Singletary*, 135 F.3d 732, 737 (11th Cir. 1998).

In sum, Robey's May 12, 2003 Rule 32 petition is due to be denied under state court rules as successive; further, he has procedurally defaulted any claims raised in that petition, and cannot show cause and prejudice for the default.  *See Reed v. Ross*,

468 U.S. 1, 11 (1984); *Toles v. Jones*, 888 F.2d 95, 99 (11th Cir. 1989) (claims barred by state's successive petition rule subject to cause and prejudice requirement), *vacated*, 905 F.2d 346 (11th Cir. 1990), *reinstated*, 951 F.2d 1200, 1201 (11th Cir. 1992) (*en banc*).  Finally, this court has considered on the merits those claims asserted in this habeas petition which respondents contend are unexhausted.  Accordingly, petitioner's motion to dismiss his habeas petition without prejudice, and his motion to stay proceedings, are due to be denied as moot.

## IV. COLLATERAL REVIEW OF STATE CONVICTIONS

The writ of habeas corpus "has historically been regarded as an extraordinary remedy."  *Brecht v. Abrahamson*, 507 U.S. 619, 633 (1993).  This is especially true in collateral review of a state court conviction.

> Direct review is the principal avenue for challenging a conviction.  "When the process of direct review . . . comes to an end, a presumption of finality and legality attaches to the conviction and sentence. The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. *Federal courts are not forums in which to relitigate state trials*."

*Id*. (emphasis supplied) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983)).  "Those few who are ultimately successful [in obtaining habeas relief] are persons whom society has grievously wronged and for whom belated liberation is little enough compensation."  *Fay v. Noia*, 372 U.S. 391, 440-441 (1963).

"Accordingly, it hardly bears repeating that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment."

*Brecht*, 507 U.S. at 634 (citations, quotation marks, and footnote omitted).  That is because

> [t]he States possess primary authority for defining and enforcing the criminal law. In criminal trials they also hold the initial responsibility for vindicating constitutional rights. Federal intrusions into state criminal trials frustrate both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights.

*Engle v. Isaac*, 456 U.S. 107, 128 (1982).[58]

These principles were reinforced by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), signed by President Clinton on April 24, 1996.  In addition to other substantive changes worked by AEDPA in the law applicable to § 2254 habeas proceedings, the Act heightened the degree of deference federal courts must accord a state court's factual determinations.

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. *The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.*

28 U.S.C. § 2254(e)(1) (emphasis supplied).  AEDPA also amended § 2254(d), which now provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless the adjudication of the claim—*

---

[58] "The reason most frequently advanced in our cases for distinguishing between direct and collateral review is the State's interest in the finality of convictions that have survived direct review within the state court system."  *Brecht*, 507 U.S. at 635 (citing *Wright v. West*, 505 U.S. 277, 293 (1992) (Thomas, J.); *McCleskey v. Zant*, 499 U.S. 467, 491 (1991); and *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977)).

> (1) resulted in a decision that was *contrary to*, or involved *an unreasonable application* of, clearly established Federal law, *as determined by the Supreme Court of the United States*; or
>
> (2) resulted in a decision that was based on *an unreasonable determination of the facts* in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis supplied).  Robey's habeas petition was filed after the effective date of AEDPA.  Therefore, the provisions of 28 U.S.C. § 2254, as amended by that Act, apply fully to his claims.

The Supreme Court first construed the language of § 2254(d)(1), as amended by AEDPA, in *Williams v. Taylor*, 529 U.S. 362 (2000).  Justice O'Connor spoke for a majority of the Court concerning the proper construction of the amended provision (Part II of the decision).  She observed that § 2254(d)(1) "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court" by requiring satisfaction of one of two conditions for issuance of the writ.  *Id*. at 412.

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied — the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id*. at 412-13 (O'Connor, J., concurring, and, majority opinion as to Part II of the Court's decision).[59]

A.   **"Contrary to . . . clearly established Federal law"**

Justice O'Connor defined the parameters of § 2254(d)(1)'s "contrary to" clause in the following manner:

> [A] state-court decision can be "contrary to" this Court's clearly established precedent in two ways.  First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law.  Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.  *See* 143 F.3d, at 869-870.

---

[59] The *Williams* formulation of the meaning of § 2254(d)(1), as amended by AEDPA, was summarized in *Bell v. Cone*, 535 U.S. 685 (2002), where the Court said:

> As we stated in *Williams*, § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  529 U.S. at 404-405, 120 S. Ct. [at] 1495.  A federal habeas court may issue the writ under the "contrary to" clause *if the state court applies a rule different from the governing law set forth in our cases*, *or if it decides a case differently than we have done on a set of materially indistinguishable facts*.  *Id.* at 405-406, 120 S. Ct. 1495.  The court may grant relief under the "unreasonable application" clause *if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  Id.*, at 407-408, 120 S. Ct. 1495.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is *objectively unreasonable*, and we stressed in *Williams* that *an unreasonable application is different from an incorrect one.  Id.*, at 409-410, 120 S. Ct. 1495.  *See also id.*, at 411, 120 S. Ct. 1495 (a federal habeas court may not issue a writ under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly").

*Bell*, 535 U.S. at 694-95 (emphasis supplied).

The word "contrary" is commonly understood to mean "diametrically different," "opposite in character or nature," or "mutually opposed." Webster's Third New International Dictionary 495 (1976). The text of § 2254(d)(1) therefore suggests that the state court's decision must be substantially different from the relevant precedent of this Court. The Fourth Circuit's interpretation of the "contrary to" clause accurately reflects this textual meaning. A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. Take, for example, our decision in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). If a state court were to reject a prisoner's claim of ineffective assistance of counsel on the grounds that the prisoner had not established by a preponderance of the evidence that the result of his criminal proceeding would have been different, that decision would be "diametrically different," "opposite in character or nature," and "mutually opposed" to our clearly established precedent because we held in *Strickland* that the prisoner need only demonstrate a "reasonable probability that . . . the result of the proceeding would have been different." *Id.*, at 694, 104 S. Ct. 2052. A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent. Accordingly, in either of these two scenarios, a federal court will be unconstrained by § 2254(d)(1) because the state-court decision falls within that provision's "contrary to" clause.

*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000) (O'Connor, J., concurring, and

majority opinion as to Part II of decision).

**B.   "Unreasonable application of clearly established Federal law"**

Justice O'Connor sketched the parameters of § 2254(d)(1)'s "unreasonable application" clause with broad strokes:

> A state-court decision that correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case certainly would qualify as a decision "involv[ing] an unreasonable application of . . . clearly established Federal law." . . .
>
> . . . .
>
> Stated simply, a federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> The term "unreasonable" is no doubt difficult to define. That said, it is a common term in the legal world and, accordingly, federal judges are familiar with its meaning. For purposes of today's opinion, the most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Williams*, 529 U.S. at 407-11 (O'Connor, J., concurring, and, majority opinion as to Part II of decision) (alteration and emphasis in original).

## V. STANDARDS FOR DETERMINING EFFECTIVENESS OF TRIAL OR APPELLATE COUNSEL

The legal standards applicable to a habeas petitioner's claims that trial or appellate counsel rendered ineffective assistance derive from the Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984), in which the Court granted *certiorari* for the express purpose of "consider[ing] the standards by which to judge

-25-

a contention that the Constitution requires that a criminal judgment be overturned because of the actual ineffective assistance of counsel." *Id.* at 684; *see also*, *e.g.*, *Williams*, 529 U.S. at 390-91 (concluding that *Strickland* provided standards that were clearly established federal law applicable to all ineffective assistance of counsel claims); *Crawford v. Head*, 311 F.3d 1288, 1296-98 (11th Cir. 2002) (summarizing *Strickland* standards); *Matire v. Wainwright*, 811 F.2d 1430, 1435 (11th Cir. 1987) ("The standard for ineffective assistance is the same for trial and appellate counsel.") (citing *People v. Bowen*, 791 F.2d 861 (11th Cir. 1986)).

The role of counsel at every critical stage of a criminal proceeding, from arraignment through exhaustion of the appellate process, is the same: "to ensure that the adversarial testing process works to produce a just result under the standards governing decision." *Strickland*, 466 U.S. at 687. Accordingly, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. *Strickland* established a test for gauging whether counsel's performance satisfied that "benchmark." The standard has two components, both of which must be satisfied by a habeas petitioner.

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. *First*, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Second*, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Unless a defendant makes*

> *both showings*, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687 (emphasis supplied).

## A.    The "Performance Prong"

The first component of the *Strickland* test requires a petitioner to demonstrate that his attorney's assistance was *not* "reasonably effective" — *i.e.*, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688.

> Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Id*. at 690. Counsel's performance is entitled to "highly deferential" judicial scrutiny, which means that a federal court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Merely identifying certain objections

or motions that might have been made at trial, or issues that might have been presented on appeal, does not give rise to a presumption of prejudice.  Rather, petitioner always bears the burden of proving that his counsel was deficient, and that such deficient performance prejudiced the defense.  *See, e.g., Songer v. Wainwright*, 733 F.2d 788, 791 (11th Cir. 1984); *United States v. Killian*, 639 F.2d 206, 210 (5th Cir. 1981); *Jones v. Estelle*, 632 F.2d 490, 491, 492 (5th Cir. 1980); *Rhodes v. Estelle*, 582 F.2d 972, 973 (5th Cir. 1978).  In effect, "the petitioner 'must establish that no competent counsel would have taken the action that his counsel did take.'" *Fugate v. Head*, 261 F.3d 1206, 1216 (11th Cir. 2001) (quoting *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (*en banc*)).

## B.    The "Prejudice Prong"

The second part of the *Strickland* test requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691 (citation omitted).  In a case such as this one, where

> a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.  . . .  In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury."

*Id*. at 695.

## VI. DISCUSSION OF INEFFECTIVE ASSISTANCE OF
## TRIAL AND APPELLATE COUNSEL CLAIMS

**A.     Sufficiency of the Evidence to Convict**

Petitioner first argues that, by assigning the specific ground of causation to the motion for judgment of acquittal — *i.e.*, petitioner's trial attorneys argued that the state's evidence was not sufficient to prove that the collision was caused by his *intoxication*, as opposed to *road conditions* or *a mechanical malfunction of his vehicle* — trial counsel thereby waived consideration of any other grounds for considering the sufficiency of the evidence on appeal.  Petitioner asserts that the state failed to prove extreme recklessness, because the evidence established that his control of the vehicle was in accordance with proper driving procedures, and that "hydro-planing" caused his vehicle to cross the roadway into oncoming traffic.

A review of the opinion on direct appeal establishes that the state intermediate appellate court reviewed the entire trial record in connection with petitioner's claims regarding the sufficiency and weight of evidence.  It then concluded that the evidence reasonably allowed the jury to conclude that Tasha Kathleen Reese's death and Jessie James McNabb's injuries would not have occurred but for petitioner's conduct, and that evidence linked petitioner with the homicide and assault.[60]  Further, a general review of the sufficiency of the State's evidence by this court establishes that, even had counsel preserved all possible grounds on which to challenge the sufficiency of

---

[60] Doc. no. 5 (Memorandum Opinion of Alabama Court of Criminal Appeals on direct appeal), at 1-3.

the evidence, there is not a reasonable probability that, but for counsel's deficiencies, the result of the proceeding would have been different.  In addition, the appeals court found on this issue in the Rule 32 proceeding, because the state offered evidence in support of the element of "extreme indifference to human life" (*e.g.*, that petitioner, while intoxicated, drove his unbelted passenger on a dark, rain-slick highway), the omission was neither deficient performance nor prejudicial.  This determination is neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; and, it is not an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Therefore, this claim also is without merit.

## B.    Objections To The Prosecutor's Closing Arguments

Petitioner next contends that, by lodging only "general objections" to the prosecutor's remarks during the rebuttal stage of closing arguments, his trial counsel did not alert the judge to the fact that the comments were a reference to petitioner's post-*Miranda*-warning silence, as opposed to an exercise of his Fifth Amendment right to not testify at trial.  Petitioner also argues that such an objection failed to preserve the issue for review on direct appeal.[61]  Finally, petitioner claims that the

---

[61] The Alabama Court of Criminal Appeals did find that trial counsels' general objections to the prosecutor's closing remarks did not preserve the issues for review.  Nevertheless, that court considered the claim, at least in part, on the merits, and found that the prosecutor's comments did not refer to petitioner's decision to not testify at trial, but instead related to his refusal to submit to a breath test, or to provide a blood sample, on the night of the accident, both of which acts were brought out in the testimony and evidence at trial.  For that reason, the appellate court quoted from cases in which a prosecutor's comments were held to be reasonable inferences from the evidence.

performance of appellate counsel was deficient for arguing only that the prosecutor's remarks referenced his Fifth Amendment right not to testify at trial, rather than his post-*Miranda*-warning silence.  These contentions merit extended discussion.

The constitutional propriety of a prosecutor's closing remarks is an issue that must be determined before the performance of petitioner's counsel can be gauged. *See*, *e.g.*, *United States v. Vera*, 701 F.2d 1349, 1361 (11th Cir. 1983) ("The test for determining whether a prosecutor's comments warrant the granting of a new trial is (1) *whether the remarks were improper* and (2) whether they prejudicially affected substantive rights of the defendants.") (emphasis supplied) (citing *United States v. Butera*, 677 F.2d 1376, 1383 (11th Cir. 1982), *United States v. Dorr*, 636 F.2d 117, 120 (5th Cir. 1981), and *United States v. Garza*, 608 F.2d 659, 663 (5th Cir. 1979)). The determination of that issue is bounded primarily by the Supreme Court's decisions in *Griffin v. California*, 380 U.S. 609 (1965), *Doyle v. Ohio*, 426 U.S. 610 (1976), and *Wainwright v. Greenfield*, 474 U.S. 284 (1986).

In *Griffin*, the Court held that direct comments by a state prosecutor on a criminal defendant's decision to not testify at trial violated the Self-Incrimination Clause of the Fifth Amendment,[62] as made applicable to the states by the Fourteenth

---

[62] In the part here pertinent, the Fifth Amendment to the United States Constitution provides that "No person shall . . . be compelled in any criminal case to be a witness against himself. . . ." U.S. Const., amend. V.  *Cf.* 18 U.S.C. § 3481 ("In [the] trial of all persons charged with the commission of *offenses against the United States* . . . the person charged shall, at his own request, be a competent witness.  *His failure to make such request shall not create any presumption against him*.") (alteration and emphasis supplied).

Amendment.[63]  *See Griffin v. California*, 380 U.S. at 615; *see also*, *e.g.*, *Jenkins v. Anderson*, 447 U.S. 231, 235 (1980) ("The Fifth Amendment guarantees an accused the right to remain silent during his criminal trial and prevents the prosecution from commenting on the silence of a defendant who asserts the right.") (citing *Griffin*, 380 U.S. at 614).

*Doyle v. Ohio* held that "the use for impeachment purposes of [a defendant's] silence, at the time of arrest and after receiving *Miranda* warnings, violate[s] the Due Process Clause of the Fourteenth Amendment." 426 U.S. at 619.[64] As the Court later observed in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), the *Doyle* rule "rests on the fundamental unfairness of implicitly assuring a suspect [through the right-to-remain-silent component of *Miranda*] that his silence will not be used against him and then

---

[63] During a long process of selectively "incorporating" various aspects of the first ten amendments to the United States Constitution — amendments which, by their express language, applied only to the national government — into the Fourteenth Amendment, so as to make them applicable to the states, the Supreme Court held in *Malloy v. Hogan*, 378 U.S. 1 (1964), that the Fifth Amendment's privilege against self-incrimination was protected by the Fourteenth Amendment against abridgement by the states. *See also California v. Byers*, 402 U.S. 424 (1971); *Williams v. Florida*, 399 U.S. 78 (1970).

[64] The Supreme Court refined the *Doyle* holding in a series of subsequent decisions, including *Fletcher v. Weir*, 455 U.S. 603, 606-07 (1982) (*per curiam*) (holding that the Constitution does not prohibit the use for impeachment purposes of a defendant's silence after arrest if no *Miranda* warnings are given), *Anderson v. Charles*, 447 U.S. 404, 408 (1980) (*per curiam*) (holding that "*Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements"), and *Jenkins v. Anderson*, 447 U.S. 231, 239 (1980) (holding that the Constitution does not prohibit the use for impeachment purposes of a defendant's silence prior to arrest). As the Court later observed, "[s]uch silence is probative and does not rest on any implied assurance by law enforcement authorities that it will carry no penalty." *Brecht v. Abrahamson*, 507 U.S. 619, 628 (1993) (citing *Jenkins v. Anderson*, 447 U.S. at 239).

using his silence to impeach an explanation subsequently offered at trial." *Id.* at 628 (citations and internal quotation marks omitted) (alteration added).[65]

The Court next held in *Wainwright v. Greenfield*, 474 U.S. 284 (1986), that it was not permissible for a state prosecutor to use a defendant's exercise of the "right-to-consult-counsel-before-questioning" component of *Miranda* as affirmative proof of a fact in issue:  in that case, the defendant's rational thought processes ("sanity") shortly following arrest. *Id.* at 295.  The Court rejected the state's argument that, unlike *Doyle* and its progeny, in which a defendant's post-*Miranda*-warning *silence* had been used for purposes of impeaching a testifying defendant, it was permissible for the prosecutor to use a defendant's post-*Miranda*-warning *conduct* and *statements* for substantive purposes.[66]

---

[65] *Cf. United States v. Hale*, 422 U.S. 171, 182-83 (1975).  The Supreme Court's opinion in *Hale*, handed down during the Term previous to *Doyle*, utilized the Court's inherent supervisory powers to condemn the same conduct by Assistant United States Attorneys in federal criminal prosecutions. *See also*, *e.g.*, *United States v. Tenorio*, 69 F.3d 1103, 1106 (11th Cir. 1995) (holding that the government's use of a defendant's post-*Miranda*-warning silence to impeach a testifying defendant and imply guilt required reversal, because "*Doyle v. Ohio* and its progeny mandate that a defendant's exculpatory testimony cannot be impeached by his post-*Miranda* silence on the ground that he did not give an explanation for his conduct at the time of arrest" (citations omitted)); *United States v. Meneses-Davila*, 580 F.2d 888, 890 (5th Cir. 1978) ("While *Doyle* involved a state trial and the due process clause of the Fourteenth Amendment, it is at once obvious that the Court's decision reaches into federal courts with constitutional authority through the Fifth Amendment.").

[66] On three occasions following his arrest in Florida for sexual battery, the defendant in *Wainwright v. Greenfield* had been given *Miranda* warnings; and, in each instance, defendant stated that he desired to consult an attorney before answering police questions.  Greenfield later entered a plea of not guilty by reason of mental disease or defect.  Like the petitioner in the present case, the defendant in *Greenfield* did not testify at trial, "but two psychiatrists expressed the opinion that he was a paranoid schizophrenic who had been unable to distinguish right from wrong at the time of the alleged offense." *Wainwright*, 474 U.S. at 287.  During closing arguments, the prosecutor, over defense objections, reviewed police testimony about each occasion on which the defendant had exercised the right-to-consult-counsel-before-questioning component of *Miranda*, "and suggested

With these principles in mind, the court now will address each of the state prosecutor's closing remarks.

1.      **Prosecutor's first remark**:  "Let's have some blood and urine, make sure we're wrong.  Show us otherwise."

The prosecutor's first remark clearly did *not* reference petitioner's Fifth Amendment right to not testify at trial; instead, it was a comment on his refusal to voluntarily submit to breath and blood tests to determine the amount of alcohol in his system during the early morning hours following the collision.[67]  Such comments are permissible under *South Dakota v. Neville*, 459 U.S. 553 (1983).   The Supreme Court's decision in *Neville* announced three significant holdings: (1) "[i]n the context of an arrest for driving while intoxicated, a police inquiry of whether the suspect will take a blood-alcohol test is not an interrogation within the meaning of *Miranda*" (*id*. at 564 n.15); (2) "a refusal to take a blood-alcohol test, after a police officer has lawfully requested it, is not an act coerced by the officer, and thus is not protected by the privilege against self-incrimination" (*id*. at 564); and (3) evidence of a defendant's refusal to submit to tests to determine blood alcohol content may be admitted at trial

---

that his repeated refusals to answer questions without first consulting an attorney demonstrated a degree of comprehension that was inconsistent with his claim of insanity."  *Id*. (footnote omitted). The Supreme Court overturned the conviction, holding that a state prosecutor's use of a defendant's post-*Miranda*-warning request to consult counsel as affirmative proof of a fact in issue violated the Due Process Clause of the Fourteenth Amendment.

[67] As noted in Part I of this opinion, petitioner refused to submit to a *breath* test, or to provide a *blood sample*, but ultimately agreed to give a *urine* sample.  Thus, the prosecutor's comment "Let's have some . . . *urine*" was factually incorrect, but the degree of that error does not rise to a level meriting constitutional protection.

without violation of the Due Process Clause of the Fourteenth Amendment. *Id*. at 564-66.

Accordingly, it was not constitutionally impermissible for the state prosecutor to introduce and comment upon evidence of petitioner's refusal to submit to tests to determine the extent of alcohol or controlled substances consumed or ingested by him. *See also*, *e.g.*, Ala. Code § 32-5A-194(c) (1975).[68]

> **2.     Prosecutor's second remark**:  "And if he didn't have anything to hide *that night*, if he knew that there was something wrong with that car, and that's the reason he slipped on the road and went into the wrong lane of traffic, if he knew that, why did he bother to try to hide it?"  (Emphasis added.)

The italicized phrase, "that night," clearly indicates that the prosecutor was *not* commenting upon petitioner's decision to not testify at trial, but was instead referring to his failure to state on the night of the collision that mechanical defects or road conditions had caused his automobile to "slip[] on the road and [veer] into the wrong lane of traffic."  The rub lies in the fact that the prosecutor did not clearly specify the time frame encompassed by her remark.

---

[68] The statutory provision cited in text provides that:

> (c) If a person under arrest refuses to submit to a chemical test under the provisions of Section 32-5-192, *evidence of refusal shall be admissible* in any civil, criminal or quasi-criminal action or proceeding arising out of acts alleged to have been committed while the person was driving or in actual physical control of a motor vehicle while under the influence of alcohol or [a] controlled substance.

Ala. Code § 32-5A-194(c) (1975) (1999 Replacement Vol.) (emphasis supplied).

### a.   Pre-*Miranda*-warning silence

If the prosecutor's comment had been limited to the approximately, one-hour period between the arrival of Birmingham Police Officer John Bishop on the scene of the collision and Officer Venus Feagins's subsequent recital of *Miranda* rights to petitioner at the city jail, the statement would have been permissible under the rationale of *Jenkins v. Anderson*, 447 U.S. at 231 (1980), holding that the Fifth Amendment, as applied to the states through the Fourteenth Amendment, is not violated by the use of *pre-arrest silence* to impeach a testifying defendant's credibility.  *Id.* at 238.[69]

---

[69] The defendant in *Jenkins*, who was charged in state court with first-degree murder, but convicted of manslaughter, had surrendered himself to authorities about two weeks after the homicide.  He testified at trial that the victim's death occurred in self-defense.  During cross-examination, the prosecutor questioned defendant about why he had said nothing about acting in self-defense during the interval between the killing and his surrender to authorities. 447 U.S. at 233. "In closing argument to the jury, the prosecutor again referred to [defendant's] pre-arrest silence. The prosecutor noted that petitioner had 'waited two weeks, according to the testimony — at least two weeks before he did anything about surrendering himself or reporting [the stabbing] to anybody.'"  *Id.* at 234.  The prosecutor argued that those facts demonstrated the falsity of defendant's self-defense claim.  The Supreme Court affirmed the conviction, holding — as noted in text — that the Fifth Amendment, as applied to the states through the Fourteenth Amendment, is not violated by the use of *pre-arrest silence* to impeach a testifying defendant's credibility.  *Id.* at 238.  *See also, e.g., United States v. Tenorio*, 60 F.3d 1103, 1108 (11th Cir. 1995) (Edmondson, J., concurring) ("[T]he district court did not err in admitting evidence of Tenorio's pre-*Miranda* silence or demeanor."); *United States v. Simon*, 964 F.2d 1082, 1086 n.* (11th Cir. 1992) ("Silence is admissible in the absence of *Miranda* warnings."); *United States v. Rivera*, 944 F.2d 1563, 1568 (11th Cir. 1991) ("The government may comment on a defendant's silence if it occurred prior to the time that he is arrested and given his *Miranda* warnings.").  *Cf. Fletcher v. Weir*, 455 U.S. 603, 605-07 (1982) (*per curiam*) (holding that a state does not violate the Constitution by permitting cross-examination of a testifying defendant on the basis that he remained silent during the period following arrest, but prior to the administration of *Miranda* warnings).

### b.   Post-*Miranda*-warning silence

Here, however, the prosecutor's second statement was open-ended, and not limited to the period prior to petitioner's receipt of *Miranda* warnings.  Indeed, the remark arguably referenced petitioner's failure to provide an exculpatory explanation for his loss of vehicular control following the administration of *Miranda* warnings. Having received *Miranda* warnings, petitioner's failure to explain the erratic movements of his automobile could be construed as reliance on his right to remain silent, as opposed to a negation of the exculpatory theory suggested by defense counsel.  Such comments upon petitioner's post-*Miranda*-warning silence were constitutionally impermissible under the rationale of *Doyle v. Ohio*, 426 U.S. at 617-18.

The dichotomous distinction between the constitutional propriety of using a defendant's silence (or failure to provide an exculpatory explanation for his conduct) *prior to* administration of *Miranda* warnings, *versus* his silence *after* receiving such warnings, is well illustrated by the Supreme Court's holding in *Brecht v. Anderson*, 507 U.S. 619 (1993).  There, the defendant — after inflicting a fatal gunshot wound to his brother-in-law — fled the scene of the shooting in his sister's automobile.  In a nearby town, however, defendant drove the car into a ditch.

> When a police officer stopped to offer assistance, petitioner told him that his sister knew about his car mishap and had called a tow truck. Petitioner then hitched a ride to Winona, Minnesota, where he was stopped by police.  At first he tried to conceal his identity, but he later identified himself and was arrested.  . . .  Petitioner was returned to Wisconsin, and thereafter was given his *Miranda* warnings at an arraignment.

-37-

Then petitioner was charged with first-degree murder.  At trial . . . he took the stand and admitted shooting Hartman, but claimed it was an accident.  . . .

*The State argued that petitioner's account was belied by* the fact that he had failed to get help for Hartman, fled the Hartmans' home immediately after the shooting, and lied to the police officer who came upon him in the ditch about having called Mrs. Hartman. In addition, the State pointed out that petitioner had failed to mention anything about the shooting being an accident to the officer who found him in the ditch, the man who gave him a ride to Winona, or the officers who eventually arrested him. *Over the objections of defense counsel, the State also* asked petitioner during cross-examination whether he had told anyone at any time before trial that the shooting was an accident, to which petitioner replied "no," and *made several references to petitioner's pretrial silence during closing argument.* Finally, the State offered extrinsic evidence tending to contradict petitioner's story, including the path the bullet traveled through Mr. Hartman's body (horizontal to slightly downward) and the location where the rifle was found after the shooting (outside), as well as evidence of motive (petitioner's hostility toward Mr. Hartman because of his disapproval of petitioner's sexual orientation).

*Brecht*, 507 U.S. at 624-25 (citation and footnote omitted) (emphasis supplied).

The Supreme Court held that it was not constitutional error for the state prosecutor to use the defendant's failure to provide an exculpatory explanation for the homicide *prior to* the administration of *Miranda* warnings, both for purposes of impeachment and during closing argument to the jury.  A different conclusion pertained to the period following the administration of *Miranda* warnings, however.

The first time petitioner claimed that the shooting was an accident was when he took the stand at trial.  It was entirely proper—and probative— for the State to impeach his testimony by pointing out that petitioner had failed to tell anyone before the time he received his *Miranda* warnings at his arraignment about the shooting being an accident.  Indeed, if the shooting was an accident, petitioner had every reason—including to clear his name and preserve evidence supporting his version of the events—to offer his account immediately following the shooting.  On the other hand, the State's references to petitioner's silence after that point in time,

-38-

or more generally to petitioner's failure to come forward with his version of events at any time before trial, see n.2, *supra*, crossed the *Doyle* line. For it is conceivable that, once petitioner had been given his *Miranda* warnings, he decided to stand on his right to remain silent because he believed his silence would not be used against him at trial.

*Id*. at 628-29.

> **3. Prosecutor's third remark**:  "If he didn't have anything to hide, why would he tell them no?  Why not offer a simple explanation?:  'There's something wrong with the car.'"

The prosecutor's final remark combines elements of both of her preceding statements:  *i.e.*, petitioner's refusal to submit to a breath test or voluntarily provide a blood sample ("If he didn't have anything to hide, why would he tell them no?"); *and*, arguably, his post-*Miranda*-warning silence ("Why not offer a simple explanation?:  'There's something wrong with the car.'").  Neither of the two statements referenced petitioner's decision to not testify at trial.[70]  Even so, for the same reasons discussed in the immediately preceding part of this opinion, the second remark was not permissible under *Doyle* and *Greenfield*, because of the prosecutor's failure to limit her comment to petitioner's actions prior to receipt of *Miranda* warnings.

---

[70] This court has read the two sentences of the prosecutor's final remarks in conjunction with one another.  As so read, the word "them" in her initial rhetorical question ("[W]hy would he tell *them* no?") — which clearly references police officers — leads to the conclusion that her second rhetorical question ("Why not offer a simple explanation?:  'There's something wrong with the car.'") referred to petitioner's failure to provide police officers an exculpatory explanation for veering into oncoming traffic, rather than his failure to testify at trial.  Even so, the place and time at which petition told "them" (police officers) "no," in response to requests that he submit to breath or blood tests, was at the City's jail, *following* the administration of *Miranda* warnings.  Hence, the constitutional impropriety discussed in text.

### 4.      The effect of the prosecutor's remarks on the jury

The question of whether a prosecutor's statement in closing argument invited a jury to consider a defendant's constitutionally-protected silence as evidence of guilt "turns on whether the remark is 'manifestly intended' by the prosecutor or 'would naturally and necessarily be understood by the jury' as a comment on the defendant's silence." *Matire v. Wainwright*, 811 F.2d 1430, 1435 (11th Cir. 1987) (quoting *United States v. Vera*, 701 F.2d 1349 (11th Cir. 1983)).  A court must "look to the context in which [each] statement was made in order to determine the manifest intention which prompted it and its natural and necessary impact upon the jury." *Samuels v. United States*, 398 F.2d 964, 967 (5th Cir. 1968) (citation omitted).[71]

Here, two of the prosecutor's comments show a "manifest intent" to highlight petitioner's failure to provide police officers an exculpatory explanation for his loss of vehicular control on the night of the fatal collision.  The question of whether the remarks "would naturally and necessarily be understood by the jury" as referencing petitioner's silence at the scene, *prior to* the administration of *Miranda* warnings, as opposed to his *post*-arrest, *post-Miranda*-warning silence, asks for this court to draw a distinction that is too fine to be decided in favor of the state respondents.

---

[71] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

### 5.     Performance prong conclusion

For the foregoing reasons, this court concludes that two of the prosecutor's closing remarks were constitutionally impermissible. The performance of petitioner's trial attorneys, therefore, was deficient for lodging only a "general objection," and for failing to clearly specify the objectionable nature of the two comments. The performance of petitioner's appellate counsel also was deficient for contending on direct appeal only that the statements referenced petitioner's decision to not testify at trial, as opposed to his post-*Miranda*-warning failure to provide police officers an exculpatory explanation for his loss of vehicular control on the night of the fatal collision.

### 6.     Prejudice prong analysis

The conclusion that the performance of petitioner's trial and appellate counsel was constitutionally deficient does not end the analysis, however. This court still must determine whether the deficient performance of counsel prejudiced petitioner. *See Strickland*, 466 U.S. at 687.

In *Brecht*, the Supreme Court directly addressed a question of first impression: *i.e.*, the appropriate standard for reviewing *Doyle* errors, such as those discussed above, on collateral review of state convictions in federal habeas proceedings. *See* 507 U.S. at 622, 629-30, 638. The Court concluded that "the standard for determining whether habeas relief must be granted [on collateral review] is whether the *Doyle* error 'had substantial and injurious effect or influence in determining the jury's verdict,'" *id*. at 622 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)), rather than

-41-

the "harmless beyond a reasonable doubt" standard enunciated in *Chapman v. California*, 386 U.S. 18, 24 (1967), which applies to cases on direct review. *See Brecht*, 507 U.S. at 630.[72]

The question to be addressed here, therefore, is whether the state prosecutor's improper use of petitioner's post-*Miranda* silence (failure to state an exculpatory explanation for the erratic movements of his automobile on the night of the collision), and the failure of petitioner's trial counsel to specifically state the objectionable nature of the prosecutor's remarks when lodging objections, "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 638.  In light of the record as a whole, this court believes it is clear that such errors did not have such effect.

Possibly the most egregious aspect of the prosecutor's closing remarks in the context of this record is, they were so unnecessary.  The strength of the state's case as to petitioner's guilt of driving an automobile while under the influence of

---

[72] See Part IV of this opinion, *supra* at note 57 and accompanying text, where it was observed that:

> The principle that collateral review is different from direct review resounds throughout our habeas jurisprudence.  Direct review is the principal avenue for challenging a conviction.  "When the process of direct review—which, if a federal question is involved, includes the right to petition this Court for a writ of certiorari—comes to an end, a presumption of finality and legality attaches to the conviction and sentence.  The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited.  Federal courts are not forums in which to relitigate state trials."

*Brecht*, 507 U.S. at 633 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983)) (other citations omitted).

proscribed substances, and, in reckless disregard of human life, was overwhelming. Not only did petitioner not testify at trial, but he also offered nothing in rebuttal of the state's evidence, other than the suggestion of defense counsel that the collision might have been caused by road conditions or mechanical defects, as opposed to petitioner's unequivocally impaired condition.[73]

Nevertheless, the prosecutor's objectionable remarks were uttered only twice, and both were fleeting.  Each was ambiguous, in the sense that it is difficult to determine whether she was referring to petitioner's silence at the scene of the wreck, before *Miranda* warnings were administered, or afterwards.  Both remarks were uttered in response to the closing-argument contention of defense counsel, based upon cross-examination of the City's accident investigator, that the collision might not have been caused by petitioner's intoxication, but by road conditions or, perhaps, mechanical defects in his automobile.  *Cf. United States. v. Campbell*, 223 F.3d 1286, 1290 (11th Cir. 2000) (*per curiam*) (no reversible error when government simply made explicit, in closing argument, an inference that the jury could have drawn from the evidence) (citing *United States v. Smith*, 700 F.2d 627, 633-34 (11th Cir. 1983) (noting that a lawyer has the right to state during closing argument his or her contention as to the conclusions the jury should draw from the evidence)).

The evidence of petitioner's guilt is strong.  At the time of the crash that killed one person and seriously injured another, petitioner was driving an automobile above

---

[73] *Cf. United States v. Forrest*, 620 F.2d 446, 455-56 (5th Cir. 1980); *Samuels v. United States*, 398 F.2d 964, 967-68 (5th Cir. 1968).

the posted speed limit, at night, in rainy weather conditions, while legally intoxicated *and* under the influence of controlled substances.  Therefore, the court concludes that the *Doyle* error did not have a substantial and injurious effect or influence in determining the jury's verdict.  Consequently, petitioner is not entitled to habeas relief based on ineffective assistance of trial counsel with regard to this issue.

Arguably, the deficient performance of petitioner's *appellate* counsel, for contending on direct appeal only that the prosecutor's closing remarks were a comment on petitioner's decision to not testify at trial, as opposed to his post-*Miranda*-warning failure to provide police officers an exculpatory explanation for his loss of vehicular control on the night of the fatal collision, should be judged by the *Strickland* standard, rather than the *Brecht/Kotteakos* standard applicable to "the category of constitutional violations which [the Supreme Court has] characterized as 'trial error.'"  *Brecht*, 507 U.S. at 629 (citing *Arizona v. Fulminante*, 499 U.S. 379, 307 (1991)).  The *Strickland* standard requires petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Even if that is the appropriate standard of review, this court still does not believe that petitioner is entitled to habeas relief.

Had appellate counsel raised this issue on appeal, his likelihood of success was extremely limited.  Because trial counsel lodged only a general objections to the prosecutor's remarks, they were not preserved for review. *See Burrell v. State,* 689

So. 2d 992, 997 (Ala. Crim. App. 1996); *Whitley v. State,* 607 So. 2d 354, 359 (Ala. Crim. App. 1992).  Therefore, appellate counsel could not have prevailed on this issue, even if he had focused upon the correct issue.

If this were a capital case, the state appellate courts would have been required to review the record for "plain error."  *See* Ala. R. App. P. 45A; *Ex parte Land*, 678 So. 2d 1232 (Ala. 1996).  It is not, however; and, even if the state appellate court had reviewed this issue under a plain error standard, appellate counsel would still not have been successful.  "Plain error" arises only when the error is so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings. *Ex parte Womack*, 435 So. 2d 766, 769 (Ala. 1983).  For the same reasons discussed above in support of the conclusion that this issue does not constitute error warranting habeas relief under *Doyle,* there is no "plain error."  There is no reasonable probability that, but for appellate counsel's unprofessional errors, the result of the appeals process would have been different.  Consequently, petitioner's claim of ineffective assistance of appellate counsel fails to satisfy either the performance or the prejudice prong of *Strickland*, and does not warrant habeas relief.

**C.     Failure To Challenge Assault Indictment**

Petitioner contends that his trial counsel were ineffective for failing to challenge a defect in the assault indictment, in which he was charged with two counts of assault in the first degree for injury to one person arising from a single incident.  He alleges that this is a violation of his Fifth Amendment right to not be twice placed in jeopardy

for the same offense.  Indictments charging a single offense in different counts are "multiplicitous."

> Multiplicity is the charging of a single offense in more than one count.  *United States v. Anderson*, 872 F.2d 1508, 1520 (11th Cir. 1989) (quoting *Ward v. United States*, 694 F.2d 654 (11th Cir. 1983)).  When the government charges a defendant in multiplicitous counts, two vices arise.  First, the defendant may receive multiple sentences for the same offense.  Second, a multiplicitous indictment may improperly prejudice a jury by suggesting that a defendant has committed several crimes — not one.  *United States v. Reed*, 639 F.2d 896, 904 (2d Cir. 1981); *United States v. Hearod*, 499 F.2d 1003, 1005 (5th Cir. 1974).  To determine whether an indictment is multiplicitous, we first determine the allowable unit of prosecution.  *See United States v. Amick*, 439 F.2d 351, 359-60 (7th Cir. 1971).  . . .

*United States v. Langford*, 946 F.2d 798, 802 (11th Cir. 1991); *see also*, *e.g.*, *United States v. Smith*, 231 F.3d 800, 815 (11th Cir. 2000) (same).  The "allowable unit of prosecution" is considered in the context of the statutory provisions upon which a prosecution is based.

Here, the Alabama Court of Criminal Appeals found that the indictment correctly charged Robey with assault in the first degree based on two theories: reckless indifference to human life; and, driving under the influence.  Each count required the proof of elements different from the other.  The Court therefore held that his attorney was not ineffective for failing to present a challenge.[74]  *See Blockburger v. United States*, 284 U.S. 299, 304 (1932) (indictment charging multiplicitous counts not barred by Double Jeopardy Clause where each count involves distinct element).

---

[74] Doc. 10 (Memorandum Opinion of Alabama Court of Criminal Appeals on appeal of Rule 32 claims), at 5.

Regardless of the correctness of this holding, the trial court imposed only one concurrent twenty year sentence for each of the two assault convictions. *See Langford*, 946 F.2d at 804-05 (multiplicitous indictment harmless because sentences for multiplicitous counts concurrent). It is evident that any failure of counsel to challenge the indictment did not result in prejudice to petitioner; therefore, this claim is without merit. The state court finding of lack of merit is not contrary to, nor does it involve an unreasonable application of, clearly established federal law, and it is not an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Therefore, this claim does not warrant habeas relief.

**D.     Failure To Object To Admission Of The "Key Chain"**

Petitioner alleges that his trial counsel were ineffective for failing to object to the admission of a chain attached to the ignition key of the automobile he drove on the night of the fatal collision — a piece of evidence which, he contends, was not relevant and highly prejudicial. The object in question contained the words "I'm trying to graduate with a 4.0 blood alcohol level."[75] The Alabama Court of Criminal Appeals determined that trial counsel was not ineffective for failing to object to this evidence because, if it did belong to petitioner, it was probative; if it did not belong to him, however, it was not prejudicial.[76]

This issue pivots on testimony to the effect that the vehicle driven by petitioner on the night of the collision was not titled in his name, and his trial counsel brought

---

[75] TR. 208.

[76] Doc. no. 10, at 3.

-47-

out on cross-examination the possibility that the key chain did not belong to petitioner, but to the owner of the vehicle. A trial court has broad discretion in ruling upon the relevancy and admissibility of evidence. *United States v. Kelly,* 888 F.2d 732, 743 (11th Cir. 1989); *Ex parte Loggins*, 771 So. 2d 1093, 1103 (Ala. 2000) ("The question of admissibility of evidence is generally left to the discretion of the trial court, and the trial court's determination on that question will not be reversed except upon a clear showing of abuse of discretion."). The state appellate court's finding of lack of merit is not contrary to, nor does it involve an unreasonable application of, clearly established federal law; and, it is not an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, this issue does not support habeas relief.

## E.   Failure To Challenge The Sufficiency And Validity Of The Search Warrant

Petitioner alleges that the drawing of his blood was a violation of his Fourth Amendment rights for two reasons:  (a) the blood was drawn before the warrant was delivered to the hospital for execution; and (b) the warrant failed to comply with the language of the Alabama Code regarding search warrants.[77] Specifically, he alleges that trial counsel was ineffective — even though both of these issues were raised in the trial court — because counsel failed to *renew* the objection in their motion for new

---

[77] Doc. no. 1 (§ 2254 Petition), at 10.

trial, thereby waiving the earlier objections.[78]  He alleges also that appellate counsel was ineffective for failing to address these issues on appeal.[79]

Petitioner never raised the issue of ineffectiveness of trial counsel with regard to either of these issues in his Rule 32 petition.  As discussed in Part III of this opinion, however, if petitioner were to attempt to raise these issues in state court now, they would be procedurally barred as a successive petition.  In *Castille v. Peoples*, 489 U.S. 346 (1989), the Supreme Court held that a federal habeas court could hold claims to be procedurally defaulted and, therefore, exhausted "if it is clear that [petitioner's] claims are now procedurally barred under [Alabama] law."  *Id*. at 351 (citations omitted).  Therefore, petitioner is procedurally barred from raising the issue of ineffective assistance of trial counsel with regard to the search which resulted in the drawing of his blood.

Petitioner also did not allege that appellate counsel was ineffective for failing to challenge the search on the ground that his blood was drawn before the warrant was delivered for execution.  Therefore, this claim also is procedurally barred.  *Id*.

Petitioner *did* allege an ineffective assistance of appellate counsel claim in his Rule 32 petition, however, based on appellate counsel's failure to contend on direct appeal that the warrant affidavit did not comply with certain requirements of Alabama law.[80]  The Rule 32 trial court found that all of petitioner's ineffective assistance

---

[78] *Id.* at 12.

[79] *Id.*

[80] R32:66-68.

claims were "not supported by the record, and any of these alleged errors may well have been dictated by trial strategy, as opposed to error, and it is unlikely that any of the alleged acts or omissions would have had an effect on the outcome of this case."[81]

Petitioner raised this issue regarding appellate counsel again on appeal to the Alabama Court of Criminal Appeals.  That court addressed petitioner's claims of ineffective assistance of appellate counsel generally, rather than addressing each one separately.  Petitioner's claims of ineffective assistance of appellate counsel were rejected *en masse*, as "invited error."  The appeals court stated that petitioner should not have allowed the trial court to appoint an appellate counsel he believed to be ineffective; instead, he should have made his objections known at the trial court level, and requested the appointment of different counsel.[82]

This holding is a *non sequitur*, and reflects a misunderstanding of the "invited error" doctrine.  That doctrine refers to an error that a party cannot complain of on appeal, because the party, through his own conduct, encouraged or prompted the trial court to make the erroneous ruling.  *See United States v. Ross,* 131 F.3d 970, 988 (11th Cir. 1997) ("It is a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party.") (quoting *Crockett v. Uniroyal, Inc.*, 772 F.2d 1524, 1530 n.4 (11th Cir. 1985)); *see also United States v. Young,* 470 U.S. 1, 20-32 (1985) (Brennan, J., concurring in part and

---

[81] TR. 136-37.

[82] Doc. no. 10 (Memorandum Opinion of Alabama Court of Criminal Appeals on appeal of Rule 32 claims), at 5.

dissenting in part).  This court's review of the record does not establish that the trial court's selection and appointment of counsel to represent Robey on direct appeal was a decision encouraged or prompted by petitioner.  Thus, the appellate court's reasoning that this claim fails because petitioner failed to realize his appellate counsel was ineffective, even before counsel had written the first word of his appeal, is clearly an unreasonable application of clearly established law.  28 U.S.C. § 2254(d)(1); *see also United States v. Young, supra*.  Consequently, each of the claims of ineffective assistance of appellate counsel raised in petitioner's Rule 32 petition and subsequent appeal to the Alabama Court of Criminal Appeals will be addressed on their merits.

Petitioner's ineffective assistance of appellate counsel claim, based upon the contention that his blood was drawn before the search warrant was executed, is not supported by the evidence.  Officer John Bishop testified at trial as follows.

> Q.   At some point did they [the officers who sought a warrant] return to Cooper Green Hospital with a search warrant and affidavit?
>
> A.   Yes, ma'am.  They called me at the hospital from Judge Cahil's house.  The time, for whatever reason, I didn't note the time, and told me, you know, that they were on their way back.  And Judge Cahill had, I had talked to him on the phone again, and he said, you know, I, "You can go ahead and get the blood."  And as I was talking to them, and talked to the nurse on the phone.  But, you know, when she got off the phone I said, "*We just might as well wait, because they're in route, it won't take them no time to get back here*."   And at 3:45, according to my report, a.m., they returned *and the search warrant was executed on the defendant* for the blood.[83]

---

[83] TR. 211 (emphasis supplied).

Aside from petitioner's unsupported allegation, there is no evidence to contradict this testimony.  Unsupported assertions not grounded in the evidence presented at trial are not sufficient.  *See Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472, 1475 n.2 (11th Cir. 1991).  And, appellate counsel cannot be ineffective "for failing to raise claims 'reasonably considered to be without merit.'"  *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)).

Petitioner also alleges that appellate counsel was ineffective for failing to pursue a claim that the search warrant did not comply with the requirements of the Alabama Code and the Alabama Rules of Criminal Procedure.  This claim was raised by petitioner in his Rule 32 petition.[84]  Nevertheless, it also is without merit.  The fact that the search warrant may not have strictly complied with the requirements of state law is only relevant if that failure results in the search being constitutionally deficient.  *Cf., e.g., United States v. Burke,* 517 F.2d 377, 386-87 (2nd Cir. 1975) (evidence seized under federal warrant subject to Fed. R. Crim. P. 41 not suppressed, even though the warrant form used was directed to *state* police rather than *federal* officer, commanded that the search take place within a reasonable time rather than ten days, and provided for return to the issuing judge rather than a federal magistrate); *United States v. Simons,* 206 F.3d 392, 403 (4th Cir. 2000) (evidence not suppressed even though police failed to leave a copy of the warrant or a receipt).  The validity of search

---

[84] R32: 66-67.

warrants is governed by the Fourth Amendment to the United States Constitution, which provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const., amend. IV. Thus, a search warrant is validly issued upon a showing, under oath or by affirmation, of probable cause to believe that a legitimate object of search is located in a particular place. *See United States v. Jiminez,* 224 F.3d 1243, 1247-48 (11th Cir. 2000). A warrant sufficiently particularizes the place to be searched if the executing officer can, with reasonable effort, ascertain and identify the place to be searched and the objects to be seized. *See Steele v. United States,* 267 U.S. 498, 503 (1925).

Timothy Buckelew — the second police officer to arrive at the scene of the collision — stated, under oath, in the affidavit submitted in support of the search warrant:

> I am investigating a wreck in which William Keith Robey was the driver of an automobile. Open containers of alcohol and my own personal observations lead me to believe William Keith Robey was under the influence of alcohol and or drugs at the time of this wreck. I am requesting a quantity of blood from William Keith Robey for testing purposes. Blood alcohol content disapates [sic] quickly and I must execute this warrant as soon as possible.
>
> Based on the above I have probable cause for the issuance of a search warrant for blood from William Keith Robey.
>
> Sworn to this the 5th day of March 1995.<br>/s <u>Timothy D. Buckelew</u>

_____Affiant
                                /s Robert W. Cahill
                                District Judge

The contents of this affidavit are clearly sufficient to meet constitutional muster.

Although petitioner also complains that the warrant is misdated March 5, 1995, when

it actually was obtained and executed on March 6, 1995, this error is not fatal.  Based

on the testimony at trial, it is clear that the date was a scrivener's error, and merely a

technical, as opposed to constitutional, error.  There is no evidence that the officers

or magistrate acted in bad faith, and petitioner was not prejudiced by the error.  Thus,

the misdating of the affidavit does not invalidate it.  *See, e.g., United States v.

Cancela,* 812 F.2d 1340, 1342 (11th Cir. 1987) (one day error in date cited in body

of factual basis of affidavit does not effect validity of search warrant unless done in

bad faith).

Furthermore, the evidence establishes that the officers acted in good faith, and

in reasonable reliance on a search warrant executed by a neutral, independent, and

detached magistrate.  Consequently, the search was valid, even if the underlying

warrant was defective.  *See United States v. Leon,* 468 U.S. 879 (1984).  Therefore,

this claim is without merit.  Appellate counsel cannot be ineffective for failing to raise

a meritless issue.  *Nyhuis*, 211 F.3d at 1344.

Finally, even assuming the laboratory analysis of blood drawn from petitioner

pursuant to the warrant was inadmissible, there is no prejudice.  There was other

evidence of petitioner's intoxication, including the containers of alcohol found in his

automobile, and the testimony of police officers that he smelled of alcohol, had

bloodshot eyes, slurred speech, was unsteady on his feet, and refused tests to determine the extent of alcohol in his system.  Indeed, petitioner admits that he was intoxicated at the time of the accident.[85]

## F.   Failure To Challenge Or Appeal Variance In Indictments

Petitioner contends that his trial counsel was ineffective for failing to argue that there was a fatal variance between the murder and assault indictments in a motion for new trial.  He also alleges that appellate counsel was ineffective for failing to raise this issue on appeal.  He raised both of these issues with the trial court in his Rule 32 petition.[86]  The trial court made a general finding that all issues raised by petitioner were without merit.  Though not addressed with any specificity, this constitutes a ruling on the merits of both claims.

Despite the Magistrate Judge's order requiring respondents to "furnish copies of any court records, briefs, transcripts, or other documents which may be pertinent to the matters discussed in their answer" to petitioner's habeas petition,[87] they failed to furnish a copy of his initial brief on appeal from denial of his Rule 32 petition.  The exhibit tendered by respondents as petitioner's initial brief actually is his reply brief.[88] The initial brief has not been furnished.  Nevertheless, petitioner refers to his initial arguments in his reply brief.[89]  For example, on page 15 of his reply brief, petitioner

---

[85] R32: 67

[86] *Id*. at 91-92.

[87] Doc. no. 6.

[88] Respondents' Ex. 8.

[89] *See id*. at 3 ("Robey does not wish to repeat his initial argument concerning this matter (appellant's brief p. 15)"), and 15("Sufficiency Of The Search Warrant For Blood Evidence

lists various issues that were not raised by counsel at trial or on direct appeal that already had been addressed by him in his initial brief to the Alabama Court of Criminal Appeals, including the issue of the "Fatal Variance Between Murder And Assault Indictments (P. 70-72)."[90] Thus, this issue apparently was raised in petitioner's initial Rule 32 brief to the Alabama Court of Criminal Appeals, but it was never addressed by respondents.  The Alabama Court of Criminal Appeals also did not address the issue of ineffective assistance of trial counsel with regard to this claim; and, as discussed previously, erroneously dismissed all ineffective assistance of appellate counsel claims as "invited error."  Despite that omission and error, these claims are without merit.

The murder indictment in this case was a separate charging instrument from the assault indictment.[91]  Petitioner alleges that there is a variance between the indictments, because the murder indictment alleges that he committed homicide while driving under the influence of alcohol,[92] whereas the second count of the assault indictment alleges that he was under the influence of alcohol *or* a controlled substance.[93]

To be precise, the murder indictment charged petitioner with manifesting extreme indifference to human life by operating a vehicle under the influence of

---

(Appellant Brief p. 61-64).")

[90] *Id.* at 15.

[91] *See* CR. 18 and CR. 137, respectively.

[92] *Id.* at 18 (Murder Indictment).

[93] *Id.* at 137-38 (Assault Indictment).

alcohol.  The first count in the assault indictment alleged that petitioner manifested extreme indifference to the value of human life by operating a motor vehicle while under the influence of alcohol, whereas the second count alleged that he caused serious bodily injury "while driving under the influence of alcohol *or* a controlled substance *or any combination thereof* in violation of Section 32-5A-191" (emphasis supplied).  There is no fatal variance.

Despite petitioner's claim to the contrary, the fact that the crimes occurred simultaneously, and that one assault was alleged to have been committed while petitioner was under the influence of "alcohol *or* a controlled substance *or any combination thereof*," while the murder indictment alleges *only* alcohol, does not amount to a variance in either or both indictments.  A variance results when the charging terms and elements vary from the facts proven at trial.  *See United States v. Redd,* 161 F.3d 793, 796 (3rd Cir. 1998) (variance existed where the indictment alleged the use of a black gun in connection with a robbery but the evidence at trial proved use of silver gun).  However, even where a variance occurs, a defendant is not entitled to relief unless prejudice results.  *United States v. Glinton,* 154 F.3d 1254, 1252 (11th Cir. 1999) (variance not prejudicial because the defendants had fair notice of crimes for which they were tried); *Thompson v. Nagle*, 118 F.3d 1442, 1453-54 (11th Cir. 1997) (no fatal variance between indictment charging murder by one method and ambiguity in evidence as to which specific method actually caused death).

A review of the evidence introduced at trial establishes that petitioner was under the influence of alcohol to an illegal degree, *as well as* under the influence of

controlled substances, at the time of the collision that resulted in the underlying charges.  Therefore, the murder indictment charging that petitioner was under the influence of alcohol is not at variance with the proof.  Likewise, the assault count charging him with being under the influence of "alcohol *or* a controlled substance *or any combination thereof*" is not at variance with the proof at trial.  Further, the allegations in each indictment are not mutually exclusive of the allegations in the other.  Thus, the trial court's finding of lack of merit regarding both the ineffective assistance of trial counsel and appellate counsel claims is neither contrary to, nor an unreasonable application of, clearly established federal law; and, it is not an unreasonable determination of the facts in light of the evidence presented in the trial court.  Finally, even though these claims were not addressed by the Alabama Court of Criminal Appeals, it is clear that they are without merit and do not support habeas relief.

## G.    Failure To Challenge Admission Of Photographs

Petitioner's trial counsel objected to the admission of two photographs of the deceased, one while she was alive, and another taken during her autopsy, but showing only her head and shoulders.  Even so, petitioner alleges that his trial counsel was ineffective for failing to renew this claim in the motion for new trial, thereby waiving it.[94]  He also alleges that appellate counsel was ineffective for failing to address this issue on direct appeal.[95]

---

[94] Doc. no. 1 (§ 2254 Petition), at 14-16.

[95] *Id.*

Petitioner failed to allege this ineffective assistance of trial counsel claim in his Rule 32 petition.   Therefore, that contention is procedurally barred.  *See Castille v. Peoples*, 489 U.S. at 351.

Petitioner's ineffective assistance of appellate counsel claim apparently was raised in his Rule 32 petition and subsequent appeal;[96] even so, it was not addressed by respondents in their answer on appeal, or by the Alabama Court of Criminal Appeals in its decision upholding the trial court's denial of Rule 32 relief.[97]  Even though not addressed by the Rule 32 appellate court, this claim was found to be without merit by the trial court when it generally held all of petitioner's Rule 32 claims to be without merit, without specifically addressing this particular claim.[98] That finding is not contrary to, nor does it involve an unreasonable application of, clearly established federal law; and, it is not an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.   Indeed, as discussed below, it is devoid of merit.

Photographic evidence is admissible in criminal prosecutions if it tends to prove or disprove some disputed or material issue, to illustrate some relevant fact or evidence, or to corroborate or dispute other evidence in the case.  *See, e.g., Kuenzel v. State*, 577 So. 2d 474 (Ala. Crim. App. 1990), *aff'd*, 577 So. 2d 531 (Ala. 1991); *United States v. DeParias*, 805 F.2d 1447, 1453 (11th Cir. 1986) ("Photographs of

---

[96] *See* Respondents' Ex. 8 (Petitioner's Rule 32 Reply Brief), at 15 (citing "Relevance And Admissibility Of Photos Of Deceased" addressed in his initial brief at "P. 64-68").

[97] See discussion in Part VI(A)(6) *supra*.

[98] See R32: 138.

homicide victims are relevant in showing the identity of the victim, the manner of death, the murder weapon, or any other element of the crime."). *See generally* II Charles W. Gamble, *McElroy's Alabama Evidence* § 207.01(2), at 1023 (5th ed. 1996) (collecting cases). The admission of photographic or videotape evidence is completely within the discretion of the trial court. *Stewart v. State*, 443 So. 2d 1362, 1364 (Ala. Crim. App. 1983). Matters resting in the sound discretion of the trial court will not be disturbed on appeal, absent a clear abuse of discretion. *Ex parte Loggins*, 771 So. 2d 1093, 1103 (Ala. 2000)*; Pace v. State*, 284 Ala. 585, 226 So. 2d 645 (Ala. 1969). Here, petitioner has not demonstrated that the trial judge abused his discretion by admitting the photographs. Because trial counsel was not ineffective for failing to raise this meritless issue at trial, appellate counsel cannot have been ineffective for failing to raise it on appeal. *United States v. Nyhuis*, 211 F.3d at 1344. In sum, even though the Alabama Court of Criminal Appeals failed to address this issue on petitioner's appeal from the trial court's denial of his Rule 32 petition, the claim is without merit and does not support habeas relief.

## H.   Failure To Request Instruction On Assault In The Second Degree

Petitioner alleges that the trial court gave a lesser included offense charge for the first count of the assault indictment, but failed to do so for the second. He alleges that trial counsel was ineffective for failing to specifically request such a charge. This claim was raised in petitioner's Rule 32 petition.[99] It was also raised on appeal from

---

[99] R32: 90.

the trial court's denial of Rule 32 relief, where the Alabama Court of Criminal Appeals held it to be without merit.[100]

The record shows that the trial judge instructed the jury on the elements of assault in the second degree, as a lesser-included offense of a charge of assault in the first degree.[101]  This instruction was available for the jury to consider with regard to both counts of the assault indictment.  The state appellate court's finding of lack of merit is not contrary to, nor does it involve an unreasonable application of, clearly established federal law; and, it is not an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Therefore, this claim is without merit.

## VII. DUE PROCESS AND EQUAL PROTECTION CLAIMS

Petitioner argues that his conviction was obtained in violation of his Fourteenth Amendment rights to due process and equal protection of the laws, because there has been a "progressive dilution" in the interpretation of the murder statute as applied in DUI accidents resulting in death, and also because other DUI death prosecutions have resulted in manslaughter, rather than murder, convictions.  As noted by the state's intermediate appellate court when addressing this claim on appeal from the trial court's denial of petitioner's Rule 32 claims, it amounts to nothing more than a challenge to the sufficiency of the evidence supporting his conviction.[102]  The state

---

[100] Doc. no. 10 (Memorandum Opinion of Alabama Court of Criminal Appeals on appeal of Rule 32 claims), at 5.

[101] TR. 364-65, 371.

[102] Doc. no. 10, at 5-6.

courts determined that the evidence presented at trial was more than sufficient for a jury to reasonably conclude that petitioner's conduct manifested that degree of extreme indifference to human life necessary for a murder conviction to stand.

Petitioner was charged with violating § 13A-6-2(a)(2) in that, "under circumstances manifesting extreme indifference to human life, he recklessly engage[d] in conduct which create[d] a grave risk of death to a person other than himself, and thereby cause[d] the death of another person." The jury was instructed on the elements of murder, manslaughter, criminally negligent homicide, and homicide by vehicle; but, based on the evidence presented, found petitioner guilty of murder.

The principal question in reviewing a habeas claim grounded in the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact would have found the essential elements of the crime beyond reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). The test for reviewing the sufficiency of the evidence is the same whether the evidence is direct or circumstantial. *United States v. Staller*, 616 F.2d 1284 (5th Cir. 1980). A jury's resolution of factual disputes should not be disturbed absent compelling circumstances. *United States v. Hollifield*, 870 F.2d 574, 577 (11th Cir. 1989). The standard for weighing the constitutional sufficiency of the evidence is a limited one, and it is not required that the evidence rule out every hypothesis except that of guilt beyond a reasonable doubt. *Jackson*, 443 U.S. at 326; *Martin v. Alabama*, 730 F.2d 721, 724 (11th Cir. 1984). "The simple fact that the evidence gives some support to the defendant does not demand acquittal." *Martin*,

730 F.2d at 724.  When the factual record will allow conflicting inferences, the court must presume that the jury resolved the conflicts in favor of the prosecution and must defer to that resolution.  *Wilcox v. Ford*, 813 F.2d 1140, 1143 (11th Cir. 1987). Therefore, the duty of this court is to review the record as a whole, giving proper deference to the jury's determination of guilt and the affirmance by the Alabama Court of Criminal Appeals.

This court finds, after reviewing the trial transcript, that the state presented more than sufficient evidence from which a jury could conclude reasonably that petitioner was guilty of murder.  In addition, the state trial courts' finding of lack of merit on this issue is not contrary to, nor does it involve an unreasonable application of, clearly established federal law; and, it is not an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Therefore, this claim does not support habeas relief.

## VIII. CONCLUSION

For all of the foregoing reasons, this court concludes that the petition for writ of habeas corpus is due to be denied.  A separate judgment in conformity with this memorandum opinion will be entered contemporaneously herewith.

DONE this 31st day of January, 2005.

_____
United States District Judge